Good morning. Good morning, Your Honor. May it please the Court, Peter Wren for Plaintiff Appellant Mia Rosati. I'll reserve four minutes for rebuttal. Thank you. What's ultimately at stake in this case is access to critical treatment for gender dysphoria, the denial of which jeopardizes plaintiffs' life. But the question before the Court today is exceptionally narrow. Defendant concedes that gender dysphoria presents serious medical needs. So the only remaining question under the Eighth Amendment is whether the complaint plausibly alleges deliberate indifference to those needs. Defendant asks this Court to disregard the complaint's detailed factual allegations that surgical treatment can be medically necessary as a general matter and that it's in fact medically necessary for her. And both — Now, the complaint alleges also that the Department of Corrections — I know it's not called that in California, but the prison authorities — have a policy against ever allowing sexual reassignment surgery, SRS, for gender dysphoria. The State denies that in its briefing, but we're at a motion-to-dismiss stage. What do we do with that? Is that enough to get past the Eighth Amendment bar? The complaint plausibly alleges that there is a blanket ban on the surgical treatment at issue here. And that, of course, is the very antithesis of the individualized medical judgment that's at the foundation of adequate medical care. I understand that the State now says that's not our policy and we do it on a case-by-case basis, and that may be right, but that's not something we ought to accept as fact at the screening stage, is it right? That's absolutely right, Your Honor. And more importantly, the record here shows, and there's no dispute at all, that the reason why she was denied this treatment was because, quote, it cannot be carried out while in prison, end quote. That's literally what the government wrote to her when it denied her request. And now the Court in Norsworthy has confirmed that this is exactly CDCR's policy, as confirmed not only by its operations manual, but also by its own practice and its own employees' testimony. And she should be allowed to demonstrate that through a case. She should be able to substantiate her well-pled plausible factual allegations that there is, in fact, a blanket policy against the surgical treatment at issue here. So if that's right, then the plausibility of your complaint comes down to really a single question, which is, can the State decide that there are certain surgical procedures that it will not afford to inmates for some sort of reason? I don't know what the reason is in this case. Can the State essentially say, we'll do lots of things for inmates, but one of the things we won't do is X or Y or Z? It cannot make that type of categorical rule if the procedure is at least sometimes medically necessary. Could we even answer Judge Hurwitz's question at the screening stage, or would that have to be fleshed out at a summary judgment or at a trial? I think it could be fleshed out at summary judgment or at trial. Here, all you have is the complaint. And the complaint tells you that there's a clear prevailing professional consensus that surgical treatment can be medically necessary. And that's supported not only by WPATH, but it's also supported by the AMA, Medicare, the National Commission on Correctional Health Care, and virtually every psychiatric text. That is well enough to allege at least a plausible basis that this is the policy and that it's, in fact, medically necessary. So let's get back. Sorry, I didn't mean to speak over you. Had you finished? Yes. Let's get back to your client. What facts does your client plausibly allege in this pro se complaint, which I assume you'll fix up if we keep this case alive, that she is one of the people for whom this is medically necessary? She has alleged that she has already exhausted non-surgical treatment options. For the last decade now, she has been on hormone treatment. But notwithstanding that treatment, she continues to experience such distress so profound that it still drives her to perform self-surgery, most recently in 2012. So the idea, then, that there are somehow two medically acceptable options on the table is not found in the complaint. Well, let me ask you that. Do you have any doctor who said that she needs to have this surgery? As the court noted in Delonta, a prisoner, of course, can't be stuck in a catch-22 situation where they've both been denied access to a specialist who can make that determination. Well, let me, I'm not sure you're following my question. Is there a doctor who has, does she allege that there is a doctor who has told her that she needs this surgery? Two responses, Your Honor. The first is that The answer, no. I mean, you have explanations, but isn't the answer no? The answer is she's been denied access to a qualified medical professional who can make that determination. Well, she's getting hormone treatment, isn't she? She is. Does that, does she allege that whoever prescribed the hormone treatment for her has said, well, you now need the surgery? She has alleged that there is no one within CDCR who is both qualified and, more importantly, perhaps authorized. Well, I keep asking you direct questions, and you tell me all the other stuff. Let me help you. The answer to his question is no, isn't it? The answer to the question is no. No doctor has said that this is medically necessary for you, but the complaint alleges that a qualified medical professional would regard surgical treatment as medically necessary for them. I understand your legal argument, but the answer is that you don't have a medical opinion in this case. Yes, and that's exactly the situation in Delonta where the Fourth Circuit said, you can't trap prisoners in a catch-22 situation here. Judge Gould, if I could ask you a question. Is the standard under this screening for prisoner complaints that permitted dismissal for failure to state a claim, is that failure to state a claim standard the same or similar to the standard that we apply under 12b-6? I think it's the same or similar. I think that's a fair characterization. Okay, if that's true then, when your client alleges deliberate indifference, and under general precedent, one has to take fact allegations as true if they're plausible, do we have to take the idea that there's deliberate indifference as true? Is that a fact allegation or is that a legal conclusion on which a court has some discretion to consider it? I think it's a factual conclusion drawn from other ancillary facts, and there are several bases here for inferring deliberate indifference. The first is that she was denied access to a qualified medical professional to even consider whether or not surgical treatment was medically necessary for her, and as this Court has noted in Hoptowit, access to medical staff is meaningless if that staff isn't either qualified to address the condition at issue or willing to refer to those who are. The second is that she was told, non-treating prison officials concocted the absurd excuse that she was not documented as a sufficiently severe case to warrant surgical treatment, but she had already successfully castrated herself in their custody and explained that she had further thoughts of engaging in self-surgery on a daily basis. If that doesn't constitute a serious case, it's quite difficult to imagine what could. What if the State had sent her to a qualified professional who opined, perhaps incorrectly, that she didn't need surgery? Would we have a deliberate indifference case under those circumstances? You still could because this Court has said deliberate indifference can be established even where medical professionals disagree on an issue. And that happens, for example, when prison officials knowingly rely on an inferior opinion in order to rubber stamp a preordained decision. That was this Court's holding in both Hamilton and in Snow, where, of course, there were conflicting medical opinions on the record. But that doesn't mean a plaintiff doesn't get the chance to at least prove that deliberate indifference was motivating the denial. And I take it in this case what we have is no medical opinions on the record. We have a physician's assistant who says, I don't think she needs surgery. But we have no doctor's opinions one way or the other in the record, correct? That's right. And I also want to emphasize that the physician assistant didn't say, I don't think you really need it. He really said, this isn't something we ever do in prison. But I think the general point is you're right. On this record, all you have is the complaint's factual allegations that a qualified medical professional would regard surgical treatment as medically necessary. And essentially, the defendant is asking you to imagine that there is somehow an expert report in the record, that there is an expert who has examined plaintiff and determined it's not medically necessary, and then to hold that any contrary opinion that plaintiff could offer just boils down to a difference of opinion. But that's the case. Roberts. Can I get back to Judge Shugel's question? And this isn't your complaint, but it's a matter of interest. If the complaint merely says the State officials were merely or deliberately indifferent, but doesn't allege facts in support of that, is that allegation a factual allegation, or is it just a legal conclusion that we can ignore? I think it's a legal conclusion, but clearly the complaint here goes into excruciating detail about the reasons why there's at least a plausible inference that prison officials were deliberately indifferent. And if I could offer just one more factual basis on which that inference could be drawn, it's the fact that prison officials' response to plaintiffs' deteriorating situation has simply been to heap on more of the exact same treatment that is now proven disastrously inadequate. There's no mystery behind the harms that plaintiff faces with an exclusively non-surgical course of treatment, because they've already materialized, and yet prison officials refuse to give any adequate explanation as to why they won't even give meaningful consideration to surgical treatment that could prevent those harms. All of those are not conclusory allegations. Those are well-plaid factual allegations that support at least a plausible inference of deliberate indifference. If I could, I'd also like to turn just for a moment to the equal protection claim and say that the dismissal of the equal protection claim without any discussion is something that this Court can and should remand. It's done so in prior cases, and clearly a plaintiff's claim should not be evaluated by a judge for the first time on appeal. Isn't the equal protection claim entirely derivative of the Eighth Amendment claim? It's not. Different standards are at issue in each claim. For example, Your equal protection claim is that she's being denied medically necessary surgery when similarly situated people are not being denied it. That's basically your equal protection claim, is it not? It is. So if the surgery isn't medically necessary, then you really don't have an equal protection claim. You really don't have a claim that other prisoners are being given cosmetic surgery. I'm not suggesting for a moment that SRS is cosmetic surgery, but elective surgery. Unless you can show that this surgery is medically necessary at the end of the day, you lose your equal protection claim, don't you? It depends on the basis on which the Eighth Amendment claim is resolved. For example, deliberate indifference is not required for an equal protection claim. So it just depends on the basis for the Eighth Amendment claim's resolution. Right. But don't you have to show that the surgery was medically necessary in order to prevail on your equal protection claim? I think there is some common ground on that issue. Thank you, Mr. Wray. Thank you. You've got about three and a half minutes left. May it please the Court, Nia Nguyen for Defendant Appelli appearing at this Court's invitation to defend the district court's judgment. Whether sex reassignment surgery is medically necessary and appropriate to treat gender dysphoria is a rapidly evolving issue and has been in recent years the subject of considerable debate in both the public arena and the special correctional context. So I agree with you. It's an evolving issue. It's been subject to a lot of debate. Why doesn't Rosati state a claim? You may win on summary judgment. You may be able to come in and show that experts don't think it's appropriate. You may have other defenses. But this is a complaint that alleges that she requires a surgery, that some experts claim is medically necessary. It outlines her circumstances in great detail and suggests that prison authorities haven't paid attention to her. This may all turn out to be not true, but why doesn't it survive a motion to dismiss? Because we have the Kosslick-Umbach decision. And the Court held there that where two alternative courses of treatment exist and both alleviate the negative effects within the boundaries of moderate. But how do we know that at the motion to dismiss stage? We don't know at the motion to dismiss stage whether the alternate treatment alleviates the distress that this particular individual has. It may well. You may have been doing everything appropriately. But she alleges to the contrary. Why doesn't she get past a motion to dismiss? Because under Farmer, even if prison officials know of a substantial risk of harm, they may escape liability so long as they take reasonable steps to address the risk. In this particular case, they have provided substantial treatment that has significantly changed her body physically and also improved her mental health significantly. And so under Farmer, you need more than, given those facts where, you know, we are attentive to her needs, you need more than I need surgery, they denied it, therefore. How about this? I need surgery, they denied it, and they have a policy to always deny it without regard to my individual circumstances. Isn't that enough? Your Honor, to be clear, we don't have a blanket policy against the surgery. How do we know that? Who says? Because under the present regulations. We don't have an answer from you yet because the case was dismissed before you had a chance to answer. But that's correct, but we can also look at the present regulations and it spells out. Why do we look at the present regulations? This is not summary judgment. Well, the regulations. We're stuck with this complaint. We're at the disadvantage of only hearing one side of the story, his or hers, as the case may be. We have to take as true what's alleged. The allegation is she has this need for a surgery and they always turn it down as a matter of policy without regard to any individualized assessment. Why doesn't that get her in court? Now, maybe what she says is true, maybe it's false, maybe it's baloney, I don't know. Maybe the regulations will belie it. But how do we know at this stage? Well, for this particular procedure, in order to be qualified for it, you need a medical finding of medical necessity. And she hasn't alleged that a physician has said that this procedure is... Well, but that's the problem that other courts have treated. She's in prison. The only physicians she can see are the ones that the prison authorities let her see. And she has not been allowed to see somebody who is qualified to opine as to the necessity for this surgery. We'd have sort of, I think your colleague called it a catch-22, I'm not sure it's a catch-22, but we'd have a strange situation if you had to have a qualified opinion in order to be eligible for surgery, but the prison officials could deny you access to the people who could give you the qualified opinion. The allegations of this complaint plausibly say that experts say this is appropriate treatment for severe gender dysphoria. You don't doubt that she has gender dysphoria. The question is whether it's severe enough. And she alleges facts that suggest to me it's pretty severe. She's tried to engage in self-castration relatively recently. As Judge Silberman said, this may all turn out to be baloney. It may turn out to be this isn't the appropriate treatment. It may turn out to be that you have an expert that says that the hormone treatment is perfectly good enough or that you have some other reason not to provide the treatment. But focus just on the complaint. Don't tell us what you know from being an expert in the field. Why doesn't the complaint get her passed a motion to dismiss? Because it boils down to a difference of medical opinion. Even if she comes forth with an expert saying that she needs sex reassignment surgery in her case, the truth... Do you have a medical opinion that she does not require it? We do not. So we have no medical opinions. It can't come down to a difference of medical opinion when we have no medical opinions. Well, she's constantly being evaluated by her interdisciplinary treatment team, and so... We know that how? Well, based on her own allegations, in order to get the hormones, you have to get it prescribed by a physician. In 2004? Well, she started hormones in late 2005 and has been on hormones continually since. And if you look at the director's level, they told her that she will continue to be evaluated and treatment will be provided based on your clinician's evaluation, diagnosis and recommended treatment plan. What are you reading from, sir? From the director's level at 86 through 88. I'm sorry, where? What are you reading? I'm sorry, the director's level response to Rosati's grievance. And so they looked at her medical records and showed that, you know, her status is stable, that she's exhibiting symptom control. Yeah, but what is that based on? We have the record here, and it seems to me what the conclusion by the director, which may be deliberate indifference if it's not based on the record, is based on the physician's assistant's evaluation, correct? That allegation has to be viewed in its proper context because the grievance process is designed to allow an inmate to appeal a decision he or she dislikes. So when she filed her grievance requesting sex reassignment surgery, at the first level, it was reviewed by physician assistant Green, and there's nothing in the record for Green to say, hey, there's a denial of surgery or there's a recommendation for surgery. So she asks for surgery. Who turns her down? So it was denied at the first level, and it was signed off by a physician. Right. By a physician or a physician's assistant? It was reviewed by a physician assistant, but right below the signature of the physician assistant, it was signed off by a medical doctor. So a medical doctor looks at the physician's assistant's opinion and then says approved, correct? That's incorrect, Your Honor. What they're doing is looking in her medical record to see if there's been a denial of some kind of action. And so there wasn't any because in order to grieve a decision, there has to be a decision in the first place. So there was no decision from her physician saying that this is medically necessary. That's where I'm getting caught in a circle here. She says, I've got all these problems. You're giving me hormones, they're not working. I would like SRS. And somebody must have said no for her to file a grievance because if somebody said yes, she wouldn't add a grievance. So who said no? The short answer is the grievance process is not designed to allow inmates to request medical care. It just simply allows inmates to appeal a decision they dislike. Okay. What decision was she appealing? Who made the decision that she was appealing? She wasn't appealing any decision, and that's why that allegation has to be viewed as proper context. Okay, so whether or not she was appealing a decision, if there wasn't a decision, she's asking for this surgery. Sooner or later, you said no. The State said no. When did you say no? Well, it was no in the grievance process because of the lack of any finding from a physician. So she goes into the grievance process and in the meantime, she gets to see a physician's assistant. Right? During the grievance process, yes. She was interviewed as part of that process. Right. The physician's assistant says, I don't think she needs the surgery, and the doctor signs underneath, approved. Correct? What the physician's assistant said was that there's no finding that this is necessary because there's no such finding. It's excluded by the prison regulations. So I'm still walking in a circle here. Let's assume you say you have no policy against SRS and that may be the case or it may not be the case. I don't see anything in the regulations that helps me one way or the other, even if I was to look at them. But what the regulations say is that procedures that are excluded may be permissible if it's recommended by a physician. Right, but your regulations don't say we allow sexual reassignment surgery. Correct? Correct. Right. And Ms. Rezati is saying, in fact, your policy is never to allow it. Which, as Judge Silverman suggested, if that were your policy, would that state an Eighth Amendment claim with respect to an inmate for whom it was a medically necessary treatment? If the policy is we would never provide this procedure  then under this Court's decision in Cobell, that may state an Eighth Amendment claim. Has the State ever allowed sexual reassignment surgery to an inmate? No, Your Honor. But that's given that the diagnosis... Doesn't that make her allegation plausible? Because the diagnosis itself is very rare. And within that category, only a few who actually seek out the surgery. So it's really reflecting the fact that it's a rare procedure and it really comes up. But that doesn't mean that we have blanket policy because we never performed it. Counsel? She alleges there is a blanket policy. Correct. But this Court is not bound by that conclusory allegation. But is that an implausible allegation given that you admit you've never authorized sexual reassignment surgery? We have a case kicking up in this Court right now. It may go away. I don't want to ask you about that. Norsworthy, in which this has been a big issue. Why is that an implausible allegation? Well, because... If I understand the question correctly, it's just simply... If we disregard the treatment plan that she's on now and that we just simply categorically deny this procedure, if that's the case, then, yes, she would make out a claim. But that's not what the regulations say. And this Court can look to the regulations because it's judicially noticeable. Well, but she says, notwithstanding your regulations, which don't speak to this procedure, in fact, your policy is never to authorize it even when medically necessary. And then she quotes a bunch of people whose opinions may or may not be worth something, but at least they're physicians who say this is occasionally medically necessary for severe gender dysphoria. She describes conditions which seem like severe gender dysphoria. Again, you may win later. But why isn't that enough to get past a motion to dismiss? Because that brings us back to a difference of medical opinion. But that's my problem. I'm trying to find the medical opinion. You told me there were no medical opinions. I'm trying to find the medical opinion on the State's side where a qualified person has evaluated her and has said, she claims she needs this procedure, but I'm a doctor. She doesn't. Who said that? Well, we don't have that now. But we do know, based on... And you may have it later in the case. I'm sorry, Judge Weston. If you don't have it now, then I don't really understand why the case shouldn't be sent back. Maybe you could help me on the theory. I want to ask you the same question I asked the appellant. Is the standard for screening a prisoner civil rights claim for failure to state a claim, is that the same or similar to the standard we use under 12b-6? It's basically the same, Your Honor. So if it's basically the same, then for the reasons that are maybe underlying the questions that Judge Hurwitz and Judge Silverman asked you, why don't we have to just send this back and say, okay, you may win later, but you're not entitled to Rosati's still in the starting blocks. Here's what we can agree to. Under this Court's case law, a dismissal of a complaint without a prior opportunity or at least a chance to amend is a harsh result. And we understand in this case the district judge dismissed the case with prejudice. So the State has no objection to allowing Rosati a chance to amend. Well, if that's true, my guess is you can reach across to your opponents and shake hands because if she gets to amend, you can certainly file. I'm sure she's going to amend. I'm sure that her counsel are not going to let this 56-page Rosati complaint handwritten stand as the complaint in the case. If they intend to amend, then you can file your motions with respect to the next complaint. Why are we here? Well, without violating the circuit rules against settlement discussions, we brought the issue... I'm not talking about settlement discussions. I didn't see in your briefs anything that said we don't object to the vacation of dismissal with prejudice so that Ms. Rosati can amend her complaint. If you don't object to that, I'm not sure why we're here. We agree, Your Honor. She should be given an opportunity to amend. Okay. Thank you. Okay, thank you. Well, that's an interesting development. So it seems clear that this case is going back one way or another based on counsel's concession. The place where I think it's a little bit of a red herring is this concept of amendment. Because the question is, taking the complaint's factual allegations as true today, does it state a valid claim? So, the district court said no and this court has to provide guidance in any event as to why that was incorrect. But if the district court had dismissed with leave to amend, you wouldn't be here. Right? Because it wouldn't be in appealable order. That's correct because it felt that the defects in the facts were... I understand your position, which is that your complaint passes the screening stage. I'm asking a practical question. You surely are going to amend this complaint if we send this case back to the district court. I think there could be issues that could be amended, but the... I know. I know you'd like a home run. I'm just trying to figure out if you'll take a single. Are you going to amend the complaint when the case goes back to the district court? I can't forecast the future. I think it's reasonable to think that there might be an amended complaint. But none of the amendments would relate to the reasons for why the district court kicked this case out at the screening stage. So that's still the issue that has to be addressed by this court in order to send it back. So you're not willing to take a small victory? Certainly a victory is a victory. We're willing to take it if we deny you the big one, but you'd like the big one. Let me see if I can sweeten the single pot for a minute. The questions everyone's asked. What if we sent it back based on the concession to permit amendment of the complaint, but our panel retained jurisdiction over any future appeal? I think the court would still have a duty to say why the reason the district court provided was incorrect. Because parties, frankly, don't get to stipulate around that. Right? If the district court said the reason why I think this doesn't state a claim is because there was just a mere difference of opinion on the record, counsel's concession combined with my argument does not allow reversal without an explanation. You can logically demand that we answer your broader question, but we might answer it in a way you don't like, possibly. I don't want to negotiate with you, but let me ask you a different question here. Suppose we take all the allegations of the complaint as they are, but I want to change one thing. Suppose it had been a doctor who was giving him the hormones and not a physician's assistant. Would that change anything in your analysis? It wouldn't, because the complaint alleges that no qualified medical professional within CDCR is authorized to authorize the surgical treatment at issue here. So the distinction isn't really between a physician versus a physician's assistant. The question is, is the person a qualified medical professional to treat gender dysphoria and authorized to prescribe this particular treatment? And counsel indicated that there was a doctor at some point that signed. There was no signature. The only person who signed was basically the warden at the prison where she was at at the third level appeal. So in fact, no treating physician has ever considered whether or not surgical treatment is medically necessary for plaintiff. But I also want to emphasize the larger point that even if we set aside the blanket ban allegations, this complaint still states a claim. That was exactly the situation in Delonta, and so we'd respectfully ask reversal on those grounds. I don't know if Judge Gould has a question, but I forgot to ask your opponent, and you may not be the right person to ask, should we wait for the NORS-worthy appeal to be processed before we decide this case? I don't think there's any requirement to do that, and given the gravity of the situation here, and frankly the life-threatening harms, I would say it's not there's certainly no requirement to wait for that decision. Judge Gould, was there anything else? No, I don't have anything further. Thank you, gentlemen. Thank you.
judges: Silverman, Gould, Hurwitz